IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 15-07075 (ESL) |
| NOEMI LUGO MORALES | CHAPTER 11 |
| Debtor | |
| NOEMI LUGO MORALES | |
| Plaintiff | ADV. PROC. 17-00091 |
| v. | |
| SELECT PORTFOLIO SERVICING | |

OPINION AND ORDER

This case is before the court upon the Plaintiff's *Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 48) and *Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment* (Docket No. 49), and the Defendant's *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 50). Furthermore, the Defendant filed its *Opposition to Plaintiff's Motion for Summary Judgment* (Docket No. 59) and Plaintiff filed her *Opposition to Defendant's Motion for Summary Judgment* (Docket No. 61). The Defendant additionally filed its *Reply to Plaintiff's "Motion in Opposition to Defendant's Motion for Summary Judgment" and Motion with Compliance with Order at Docket N. 64* (Docket No. 71).

Procedural Background

The Plaintiff filed a chapter 7 bankruptcy petition on September 14, 2015 (Lead Case No. 15-07075). On Schedule A, the Plaintiff disclosed a real property located at Parcelas Aquilino #98, Barrio Ovejas, A[ñ]asco, PR. (Lead Case, Docket No. 8). The Debtor claimed the property exempt pursuant to 31 L.P.R.A § 385(a), 1851-1857[1]. On October 23, 2015, the Chapter 7 Trustee filed a Report of No Distribution (Lead Case, Docket No. 25). On October 27, 2015, Citifinancial Services of Puerto Rico, Inc., DBA CitiFinancial Plus, filed a *Motion for Relief of Stay Pursuant to 11 U.S.C. 362* alleging that it was the holder of a mortgage note secured by real property of the Debtor and that, as of October 19, 2015, the Debtor had accrued $6,999.04 in arrears (Lead Case, Docket No. 27). As evidence of security, the creditor included as attachments: (1) the note; (2) the mortgage deed and (3) a title study. On October 28, 2015, the Debtor filed an *Answer to Citifinancial Services of Puerto Rico, Inc. Motion for Relief of Stay* alleging that the Debtor's property was free of liens, as evidenced by a Certificate from the Registry of Property, Section of Mayaguez and dated October 14, 2015, which did not show the presentation or registration of the mortgage deed (Lead Case, Docket No. 29).  On December 9, 2015, Citifinancial Servicing LLC filed a *Motion to Withdraw Motion for Relief of Stay at Docket No. 27* (Lead Case, Docket No. 37). On December 24, 2015, the court entered the *Order of Discharge* (Lead Case, Docket No. 40).

On April 5th, 2017, the Debtor filed a *Motion to Reopen Case* in order to file an adversary proceeding for violation of the discharge order (Lead Case, Docket No. 44). On the same date, the Debtor filed the present adversary proceeding against Select Portfolio Services Inc. ("SPS") (Docket No. 1). The Plaintiff alleged that SPS was falsely representing that an unsecured discharged debt could be collected after the Debtor received the discharge. She further states that the Creditor falsely represented that the debt was secured with debtor's real property. The Complaint stated that SPS had sent several written communications to the Debtor, requesting the

---

[1] 31 L.P.R.A §385(a), 1851-1857 was repealed by Section 16 of Act No. 195 of Sept. 13, 2011 and substituted by the Homestead Protection Act, 31 L.P.R.A. §1858.

Plaintiff to purchase insurance for the property, offering loss mitigation or repayment alternatives, informing the Plaintiff of mortgage balance and arrears and warnings of the Defendant's foreclosure rights. The Plaintiff alleged that all the collection efforts were willful and with the intent to collect a discharged debt in violation of 11 U.S.C. §524 and §727. The Debtor stated that the actions of SPS frustrated the discharge order and had forced the Debtor to incur in unnecessary time, effort and expenses to seek the enforcement of her "rights guaranteed by the bankruptcy code, by contract, and by prior actions of the defendants" She also alleged emotional distress.

SPS filed an *Answer to the Complaint* on October 27, 2017, denying the Plaintiff's allegations. (Docket No. 31). The Defendant affirmatively alleged that the Deed of Mortgage executed by the Plaintiff was filed for recordation in the Property Registry in 2003, years before the Plaintiff filed for bankruptcy. The defendant stated that Citifinancial Services of Puerto Rico, Inc. had a perfected lien over the Debtor's residence and that, as such, SPS is a secured creditor. The Defendant argued that all the letters sent were related to the enforceable lien on Plaintiff's real property and not an attempt to collect on a personal obligation that had been discharged. Therefore, the Defendant alleged that its actions did not constitute a willful, intentional or deliberate violation to the Bankruptcy Code and that it not engaged in bad faith, coercion or harassment or any egregious conduct.

On October 15, 2018, the Plaintiff filed her *Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 48) and *Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment* (Docket No. 49). The Plaintiff asserts that she is entitled to partial summary judgment for the Defendant's multiple, willful and egregious actions of seeking to collect a discharged debt and for threatening to foreclose Plaintiff's property over which she claimed the Puerto Rico homestead exemption. The Plaintiff alleges that: (1) the Debtor received a discharge on December 24, 2015; (2) the Debtor claimed the Puerto Rico homestead exemption because she received a Registrar's Certification that stated that there was no lien over the Debtor's real property; (3) Citifinancial Services of Puerto Rico was listed as an unsecured creditor and the Debtor specified that the reason to include it in Schedule F was that the "mortgage was not

registered"; (4) Citifinancial Services of Puerto Rico, Inc., DBA Citifinancial Plus filed a Motion for Relief from Stay pursuant to 11 U.S.C. §362 claiming a secured interest over the Debtor's real property, evidenced by a Title Search which stated there was a presented mortgage deed. However, the Debtor filed her *Response to Citifinancial Services of Puerto Rico Inc. Motion for Relief of Stay* in which the Plaintiff submitted a Certificate of the Property of Registry of Mayagüez that certified that the property was free and clear of liens. Aditionally, on December 9, 2015, Citifinancial Services of Puerto Rico Inc. filed a *Motion to Withdraw Motion for Relief from Stay at Docket No. 27.* Therefore, Citifinancial took no further action to contest the Debtor's allegation that the debt was unsecured. (5) After the Debtor's discharge Citifinancial Services of P.R. transferred its rights to Select Portfolio Services Inc. ("SPS"); and (6) SPS sent the Debtor several written communications related to the debt claiming that it had a valid lien against the Debtor's property.

The Plaintiff argues that the Creditor "had ample opportunity to challenge Plaintiff's/Debtor's contention that the mortgage deed was not recorded and the property was free and clear of all liens". The Plaintiff finds support in In Re Hawkins, 377 B.R. 761 (2007 BC SD Fla) stating that "[t]he Uncontested Facts in the present case are similar to the ones in the Hawkins case, a Debtor filed a no asset Chapter 7 in which she claimed a homestead exemption on her principal place of residence and she listed Creditor, Citifinancial Services of Puerto Rico as unsecured (Debtor clearly stated that the debt was unsecured because a mortgage was not recorded); the Creditor had all the opportunities as in the case of Hawkins to move for a Motion for Relief of Stay, challenge the discharge, appear at the 341 (a) Meeting, or even do the minimum and file proof of claim, but creditor chose to do nothing and the Debtor/Plaintiff received the discharge". Aditionally, the Debtor alleges that as In Re Hawkins, the doctrine of latches applies considering that "…the original creditor had every opportunity to bring to the bankruptcy court any allegation to discuss and verify the existence of a lien and it was then (almost three years ago) when the Debtor could have raised any defense but the creditor withdrew its Motion for Relief form Stay and process ended with a discharge of the Plaintiff/Debtor."

-4-

On October 15, 2018, SPS filed its *Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 50). The Creditor alleges that it did not violate the discharge injunction imposed by 11 U.S.C. §524 or §727 and that at the time of the filing of the bankruptcy petition, SPS had, and still holds, a valid lien over certain property of the Debtor which remain unaffected. The Creditor alleges that the relevant mortgage deed was presented for recordation on October 28, 2003, and that said deed was recorded by operation of Law No. 216[2] in Plot No. 7380. The Creditor states that, pursuant to a Certification issued by the Property Registrar on July 11, 2018, the deed was presented in year 2003, and recorded pursuant to Law 216. The creditor states that the registrar clarified in the Certification that when it issued the previous certification it did not include the presentation of the mortgage due to an unknown mistake in the electronic logbooks of the Registry. However, it remains undisputed that over 11 years prior to the filing of the bankruptcy petition the creditor presented the mortgage deed in the Property Registry and, further, upon the enactment of Act 216 the mortgage was automatically recorded as of 2010. Therefore, SPS has a valid pre-petition lien over the Debtor's property. SPS states that a secured creditor may decline to participate in the bankruptcy process without jeopardizing its underlying lien. The creditor states that the adversary proceeding does not involve an avoidance action and that the actions of SPS in connection with its *in rem* rights cannot be deemed to be in violation of the discharge injunction. SPS states that its actions are allowed pursuant to 11 U.S.C. §524(j)(3) and that the letters sent were in connection with its *in rem* rights, for informational purposes only and specifically disclosing that it did not intend to collect on a debt.

On November 12, 2018, SPS filed its *Defendant's Opposition to Plaintiff's Motion for Summary Judgment* (Docket No. 59). The Defendant states that the pertinent mortgage deed was presented on the Puerto Rico Registry of Property, Section I of Mayagüez, on October 28, 2003. SPS alleges that a defect in the mortgage deed was never notified by the Property Registrar nor the mortgage deed withdrawn. Aditionally, the Defendant states that the mortgage deed was

_____

[2] The Defendant refers to Law No. 216, Act to Streamline the Property Registry of 2010. 30 L.P.R.A. §1821-1831.

automatically recorded in 2010, years before the filing of the Debtor's bankruptcy petition, by virtue of the Act to Streamline the Property Registry of Puerto Rico, Law 216 of December 27, 2010. Therefore, any acts by SPS related to its *in rem* rights are not a violation of the Debtor's discharge. The Defendant states that it is irrelevant if the Debtor opted for the Puerto Rico homestead exemption in her bankruptcy petition as the homestead right is deemed waived when a protected property is pledged for a mortgage, citing 31 L.P.R.A. §1858a(a), and therefore, the homestead claim does not affect the validity or scope of the lien. Furthermore, SPS states that, unless avoided, a secured creditor's lien passes through bankruptcy unaffected. The Defendant argues that the cases referenced by the Plaintiff, that is, Acosta v. Reparto Saman (In Re Acosta) 464 B.R. 86 (Bankr. D.P.R. 2011) and In Re Hawkins, 377 B.R. 761 (Bankr. S.D. Fla. 2007) are inapposite as both involve the discharge of unsecured debt. In In Re Acosta, the mortgage deed was withdrawn prior to the debtors' discharge, and, therefore, the debt was unsecured. Furthermore, in In Re Hawkins the creditor was seeking the imposition of an equitable lien over the debtor's property to secure the payment of an unsecured discharged debt. SPS alleges that none of the cases are applicable and that the Citifinancial filing and later withdrawal of a motion to lift the stay has no effect over the validity of the lien. The Defendant states that a secured creditor has no affirmative duty during bankruptcy proceedings to ensure that its valid pre-bankruptcy lien survives.

On November 13, 2018, the Plaintiff filed her *Opposition to Defendant's Motion for Summary Judgment* (Docket No. 61). The Plaintiff realleges that the Debtor used the Puerto Rico Homestead Exemption because the Registrar's Certification showed that there was no lien over her real property. The Debtor alleges that Article 218 of the Puerto Rico Mortgage Law states that "certifications will include the contents and the entries of the Registry; Registars are the only Officials allowed to issue Certifications; and Certifications by the Registry are public documents that give faith by themselves that will be admitted by the Courts subject to the Rules of Evidence. 30 L.P.R.A. §6361." The Debtor alleges that said certification "…was used as evidence in Plaintiff/Debtor "Response to Citifinancial Services of Puerto Rico Inc. Motion for Relief from

Stay on October 28, 2015 in which the Plaintiff/ Debtor submitted  a Certificate of the Registry of Property of Mayagüez that certified that the property was free and clear of liens and had the Deed to claim the homestead pursuant to Puerto Rico Law, registered." The Debtor states that after the motion to lift the stay was withdrawn, Citifinancial "took no other action to contest Debtor's/Plaintiff's allegation that the debt was unsecured". The Debtor argues that there was no lien at the time of the filing of the Chapter 7 case numbered 15-07075-ESL 7 and that there was no lien when the Plaintiff received the discharge on December 24, 2015. The Plaintiff states that Citifinacial's actions, or lack of action, when the Debtor presented the certification without the lien, bars SPS from claiming that the mortgage exists and that the court should apply the doctrines of equitable estoppel and general equity, as applied in In Re Hawkins. The Debtor further states that the letters sent by SPS where intended to collect on a discharged debt.

On November 15, 2018, the court entered an order granting the parties' request to vacate the pre-trial hearing considering the filing of the dispositive motions (Docket No. 64). Aditionally, the court stated the following: "it appears that the key material and relevant fact is whether the mortgage deed was actually presented before the Registry of the Property prior to the filing of the petition. The Court directs the parties to supplement their respective positions on this issue, particularly as it concerns the Explanatory Note in the July 11, 2018 certification."

SPS filed its *Defendant's Reply to Plaintiff's "Motion in Opposition to Defendant's Motion for Summary Judgment" and Motion with Compliance with Order at Docket N. 64* (Docket No. 71). The Defendant stated that the Presentation Receipt (Exhibit 4, Docket No. 51) evidences the presentation of the mortgage deed. "Once the deed is presented with the required documentation and fees, a creditor has taken all the steps necessary for its lien to be perfected and the recordation dates back to the date of its presentation." Referencing Article 31.2 of the Regulation of the Puerto Rico Mortgage Law of 1979 and Article 258 of the Puerto Rico Mortgage Law of 2015, the Creditor argues that the presentation receipt confirms that the mortgage deed was presented in 2003. SPS states that "[a]ny circumstance or internal error in the Registry of Property cannot have an effect on the existence of a lien after a creditor has responsibly complied

with every step that was required and perfected its presentation in accordance to the applicable statutes." The Defendant alleges that "it is undisputed that that the presentation of the relevant Mortgage Deed, seat no. 288 of daily entry book no. 708 (Docket No. 51, Exhibit 4) was not found defective by the Registrar and was not removed from the Property Registry. Otherwise, said entry would have lost its rank ("seat") at the Property Registry and/or would not have been recorded." Furthermore, "[i]n the observation included in the Registrar's Certification dated July 11, 2018, the Property Registrar states as follow: "For reasons unknown, the mortgage document that motivated the fourth inscription, seat no. 288 of daily entry book no. 708, did not appear to be pending in Toolkit's electronic logbook, which is the oldest logbook in the Registry. For this reason, the mortgage was not included when the certification for the year 2015 was issued." SPS alleges that the mere filing of the 2015 Certification of the Property Registry, which the Registrar has since clarified, does not have any *res judicata* effect in the absence of an adversary proceeding against the creditor attempting to avoid the lien.

<u>Material Uncontested Facts</u>

1.  On September 16, 2015, the Plaintiff, Noemi Lugo Morales, filed a chapter 7 bankruptcy petition, case no. 15-07075.

2.  On October 27, 2016, Citifinancial Services of Puerto Rico Inc. filed its *Motion for Relief of Stay Pursuant to 11 U.S.C. 362* at Docket No. 27, case no. 15-07075.

3.  The Plaintiff filed her *Response to Citifinancial Services of Puerto Rico Inc. Motion for Relief of Stay* on October 28, 2015 at Docket No. 29, Case no. 15-07075.

4.  On October 14, 2015, the Registrar of the Mayagüez Section, Beatriz T. Velez Ruiz, issued a certification in which neither the presentation nor the final registration of the mortgage deed was included, certification which was attached to the Debtor's *Response to Citifinancial Services of Puerto Rico Inc. Motion for Relief of Stay*. See Docket No. 33-1, Case no. 15-7075.

5. Citifinancial requested the withdrawal of the *Motion for Relief of Stay* on December 9, 2015, which was granted by the court on December 10, 2015. Dockets Nos. 37 and 38, case no. 15-07075.

6. The court granted a discharge to the Debtor on December 24, 2015. Docket No. 40, case no. 15-07075.

7. On April 21, 2016, Select Portfolio Servicing Inc. informed the Debtor that the servicing provider was transferred from Citifinancial Services of Puerto Rico Inc. to SPS. Do. No. 1-1, Exhibit 1, Case 17-00091.

8. Thereon, SPS sent several communications to the Debtor, included as Exhibits on Docket No. 1, which include the following:

    a. Letter requesting hazard insurance information dated May, 9, 2016, advising the Debtor the need to submit evidence of coverage or SPS will buy insurance for the property.

    b. Letter related to *Assistance Review Application* dated May 11, 2016, notifying the Debtor about loss mitigation alternatives. The letter states:

> *"Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and the enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect, and the owner of the mortgage, as lien holder, continues to have a lien on the real property."*

    c. Letter dated May 11, 2019, about alternatives or programs to address any hardship on the loan. The letter contains the same or similar language as described previously.

    d. Second and Final Notice requesting insurance information dated June 13, 2016.

    e. Letter dated September 27, 2016, requesting the Debtor's taxpayer identification number.

    f. Letter dated October 6, 2016, informing about options available to avoid foreclosure.

g.  Account Statement which included the following language: *"[t]his is not an attempt to collect a debt. This statement is being sent for informational purposes only"*.

h.  Letter dated November 2, 2016, in English and Spanish informing about options available to avoid foreclosure.

i.  Account Statement which included the following language: "This is not an attempt to collect a debt. This statement is being sent for informational purposes only".

j.  Letter dated November 23, 2016, informing about options available to avoid foreclosure.

k.  "Notification of Default and Right to Redeem" dated November 21, 2016.

9.  A mortgage deed was executed by Noemi Lugo Morales on October 3, 2003, in favor of Associates International Holdings Corporation. See Docket No. 51-2.

10. The mortgage deed was presented in the Property Registry on October 28, 2003, at 2:43 p.m. See Docket No. 51-4.

11. The Property Registrar issued a certification on November 15, 2015, which did not show the presentation or registration of the mortgage deed. Case. No. 15-07075, Docket No. 33-1.

12. However, on July 11, 2018, the Registrar issued a second certification, stating that the mortgage deed had been presented and registered pursuant to Law 216. The Registrar included the following Explanatory Note:

> *"For reasons unknown, the mortgage document that motivated the fourth Inscription, seat no. 288 of daily entry book no. 708, did not appear to be pending in Toolkit's electronic logbook, which is the oldest logbook in the Registry. For this reason, the mortgage was not included when the Certification for the year 2015 was issued. Due to the impact of hurricane María, we took it upon ourselves to extend all entries that had been recorded by virtue of Law 216 of 2010 to Expedite the Registry. Although the document did not appear in the logbook, it was amongst the documents that had been recorded by virtue of Law 216. For this reason, the entry was extended in the month of November of 2017 and consequently included in the Certification issued this year, 2018".[3]*

---

[3] The "Explanatory Note" states in Spanish: "Por razones que desconocemos, el documento de hipoteca que motivó la inscripción cuarta, asiento 288 del diario 708, no aparecía pendiente en la Bitácora electrónica de Toolkit, que es la bitácora de mayor antigüedad en el Registro. Por tal motivo, cuando se hizo la Certificación en el año 2015, la citada hipoteca no fue incluida. Como resultado del paso del Huracán María, nos dimos a la tarea de extender todos los asientos que habían quedado inscritos en virtud de la Ley 216 para Agilizar el Registro de 2010. Aunque el documento no surgía de la bitácora, si se encontraba entre los documentos que habían quedado inscritos en virtud de la Ley 216. Por tal motivo, el asiento fue extendido en el mes de noviembre de 2017 y por eso se incluyó en la Certificación expedida este año 2018."

Legal Analysis and Discussion

a. *Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* In re Colarusso, 382 F.3d 51 (1st Cir. 2004), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d, Vol 10A, § 2712 at 198 (2013). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving

party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). *See also* López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal& Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The issue before the court is if the creditor's lien remained after the bankruptcy filing, considering that the Debtor: (a) included the debt as unsecured, (b) responded to the Motion for

Relief of Stay, stating that the Registrar had certified that no lien existed, although the Motion for Relief of Stay was withdrawn by the Creditor and (c) obtained a discharge. The other matter is to determine if the Creditor violated the discharge injunction. The mayor controversy in the present case hinges on the two different certifications issued by the Registrar. The Plaintiff argues that the Creditor was notified in the chapter 7 filing that the Debtor was challenging the existence of the lien, and that SPS's failure to establish that its lien existed deems the lien voided. The Defendant, on the other hand, states that it had no obligation to defend its lien, as liens pass through bankruptcy.

b. *The Procedural Requirement for Lien Avoidance*

The Plaintiff alleges that the following acts of the Debtor signified that she intended to treat Citifinancial debt as an unsecured debt: (a) she included Citifinancial's debt as unsecured in the schedules and (b) she claimed the homestead exemption over the property. Additionally, the Plaintiff claims that the withdrawal of the Motion for Relief of Stay after the Debtor's response is sufficient to determine that the debt was discharged. The Plaintiff argues that the Creditor was compelled to take an affirmative action denying the debtor's allegation that no lien existed over the Debtor's property and proving its existence.

However, Bankruptcy Rule 7001(2) expressly requires the initiation of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property". Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93, 1995 U.S. App. LEXIS 15511, *9, Bankr. L. Rep. (CCH) P76,549, 33 Collier Bankr. Cas. 2d (MB) 1159. The Debtor did not file an adversary proceeding in the present case. "The Bankruptcy Code mandates that stay relief hearings relating to a creditor's interest in property be heard expeditiously. 11 U.S.C.S. § 362(e). Accordingly, such hearings are summary in nature. The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims." In re Northwest 15th St.

Assocs., 435 B.R. 288 (Bankr. E.D. Pa. 2010). A motion for relief from the automatic stay requires a ruling by the court, unless the parties agree otherwise, within 30 days after the request. 11 U.S.C. §362(c)(1). Pursuant to Fed. R. Bank. P. 4001, relief from the stay is obtained by a motion, and it is a contested matter as stated in Fed. R. Bankr. P. 9014, rather than an adversary proceeding. "To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a full-scale adversary lawsuit and would be inconsistent with this procedural scheme." In re Sunshine Three Real Estate Corp., 2009 Bankr. LEXIS 3585, 2009 WL 3617798 (Bankr. D. Mass. Oct. 26, 2009). "Thus, matters as covered by Bankruptcy Rule 7001 requiring discovery and extensive briefing are not appropriate for expedited determination through a motion for relief of stay." Am. Bank v. Barnes-Duncan (In re Barnes-Duncan), 2007 Bankr. LEXIS 1684, 2007 WL 1385662 (Bankr. D. Md. 2007). The court finds that the withdrawal of the Motion for Relief of Stay had no effect on the validity or extent of the lien, as the procedural scheme of the Bankruptcy Code does not support such a determination through a summary proceeding, which was commenced and not even completed. The relief of stay proceeding is limited in nature and not procedurally adequate to determine the validity of the lien over the debtor's property. If the Debtor's intention was to seek a determination to void the lien, she was procedurally required to file an adversary proceeding.

Furthermore, the failure to have an allowed claim does not affect the validity or perfection of the creditor's mortgage. In Re Belser, 534 B.R. at 234. "Fundamentally, a discharge merely releases the debtor from personal liability on the discharge[d] debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as foreclosure rights, survive and pass through bankruptcy". Bibolotti v. Am. Home Mortg. Servicing Inc., 2013 U.S. Dist. LEXIS 69242 at *22, 2013 WL 2147949 at *10 (E.D. Tex. 2013). See Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66, 74 (1991). ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.") To extinguish or modify a lien during a bankruptcy process, some affirmative step must be taken toward that end. Cen-Pen Corp. v. Hanson, 58 F.3d 89, 92-

-14-

93 (4th Cir. 1995), referencing <u>Lee Servicing Co. v. Wolf (In re Wolf)</u>, 162 Bankr. 98, 107 n.14 (Bankr. D.N.J. 1993); <u>In re Glow</u>, 111 Bankr. 209, 221 (Bankr. N.D. Ind. 1990). "Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation." *Id.,* citing <u>In re Honaker</u>, 4 Bankr. 415, 417 (Bankr. E.D. Mich. 1980).

The Plaintiff references <u>In Re Hawkins,</u> 377 B.R. 761 (Bankr. S.D. Fla. 2007) to sustain her position. The court finds <u>In Re Hawkins</u> inapposite. The creditor in <u>In Re Hawkins</u> alleged that he had an equitable lien. If the equitable lien was acknowledged by the court, the lien could've been secured by the Debtor's residence. However, the Hawkins court first determined that the alleged lien was inexistent as the debt did not comply with the requirements to constitute equitable liens in Florida. The court resorted to the equitable doctrines of latches and estoppel, considering that the creditor was making a claim in equity. The court concluded that, to hold that an equitable lien existed, a reclassification of the creditor's claim was required, and it was barred by the doctrine of latches. Additionally, the court applied the doctrine of equitable estoppel as the creditor knew of the alleged equitable lien, also knew that the debt was classified as unsecured, intended for the debtor to rely on his silence to later claim that he held an equitable lien, without advising the Debtor of his intent to reclassify said debt. For those reasons, the equitable doctrines were applied. The facts in <u>In Re Hawkins</u> are entirely different to the facts of the present case, as they refer to a very distinct type of debt which required a judicial determination.

*c.* <u>The Effect of the Certifications Issued by the Property Registrar</u>

"Property interests are created and defined by state law." <u>Acosta v. Reparto Saman Inc. (In Re Acosta)</u>, 464 B.R. 86, 94 (Bankr. P.R. 2011). In Puerto Rico, it is a well established principle that for a mortgage lien to be valid and enforceable, it must be executed through a public deed before a notary and be recorded at the Property Registry. See Article 1774 of Puerto Rico's Civil Code, 31 L.P.R.A §5042, and Article 305 of the Law for the Property Registry of the Commonwealth of Puerto Rico, 30 L.P.R.A. §6084. See also <u>Perez Mujica v. FirstBank, PR (In</u>

re Perez Mujica), 457 B.R. at 187-188 ("[u]nder the laws of Puerto Rico, mortgages are constitutive in nature, meaning that for the same to be validly constituted, the instrument in which it is created must be duly entered and recorded in the Property Registry"); In Re Las Colinas, 426 F. 2d 1005, 1016 (1st Cir. 1970) ("under Puerto Rican law recording is essential to the validity of a mortgage, one that is not recorded is a nullity"); Rosario Pérez v. El Registrador de la Propiedad de Barranquitas, 15 P.R. Off. Trans. 644, 648, 115 P.R. Dec. 491 (1984) ("the security of a ... credit does not constitute a real security-mortgage-until it is entered in the [Property] Registry"); and Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 2011 U.S. App. Lexis 23503 at *18, 2011 WL 680609 (1st Cir. P.R. Nov. 23, 2011) ("recording is essential to the validity of a mortgage, and thus, a mortgage must be recorded in order to exist.")

Pursuant to Article 303 of the Law of the Property Registry of the Commonwealth of Puerto Rico of 2015, 30 L.P.R.A. §6034[4], "[r]egistered titles shall become effective for third parties from the date of their registration. For all intents and purposes, the registration date, including the determination of the term needed for cancellation of entries, must appear in the registration itself." Furthermore, a registrar's certificate is *prima facie* evidence of the facts stated in the records of the Property Registry and mentioned in the certificate and those facts may be challenged by other evidence contradicting or overcoming them. Pueblo de Puerto Rico v. Ocean Park Dev. Corp., 73 D.PR 360. A certification manifests the content of the entries that comprise the Registry. 30 L.P.R.A. §6361.

Nonetheless, Article 315, 30 L.P.R.A. §6365, states that "[t]he existence or absence of liens on real property or real rights can only be prejudicial to third parties when certified by the Registry. However, when certifications issued by the Registrars do not conform to the Registry entries, said entries in the Registry shall be held valid and predominant."[5] The certification of the

---

[4] This section corresponds to the same text of the Mortgage and Property Registry Act of 1979, 30 LPRA §2256, which was abrogated and substituted by the Law of the Property Registry of the Commonwealth of Puerto Rico of 2015. 30 L.P.R.A. §6001 *et seq.*

[5] This section corresponds to the same text of the Mortgage and Property Registry Act of 1979, 30 LPRA §2106, which was abrogated and substituted by the Law of the Property Registry of the Commonwealth of Puerto Rico of 2015. 30 L.P.R.A. §6001 *et seq.*

Registrar issued on November 2018 stated that, although previously issuing a certification that did not contain the presentation or registration of the pertinent mortgage deed, the entry was extended by the Registrar on 2017, as the documents were part of the entries that had been recorded pursuant to Law 216. The Plaintiff has failed to evidence herein that the deed was withdrawn or that a notification of error was issued by the Registrar. As correctly argued by SPS, on said situation the entry would have lost its rank ("seat") at the Property Registry. However, SPS evidences the presentation of the deed as of 2003. Although the initial certification misled the Plaintiff to belief that no mortgage deed was pending registration or even presented, the reality of the Registry, which is predominant pursuant to 30 L.P.R.A. §6365, reflected the presentation and motivated the inscription of the mortgage deed in 2017. The deficient certification of the Property Registrar does not alter the entries in the Registry. Therefore, the lien exists as the deed was presented in 2003, duly registered in 2017 through the entry made by the Registrar pursuant to Law 216, and not avoided by the Debtor throughout the bankruptcy proceedings.

###### d. The Discharge and its Effect on SPS's Claim

Section 727(a) of the Bankruptcy Code provides for the grant of a discharge to debtors; Section 727(b) declares that the effect of a discharge is to free the debtor from all debts that arose before bankruptcy. 11 U.S.C. §§727(a) and (b). Likewise, under 11 U.S.C. § 524(a)(2), a discharge from bankruptcy operates as an injunction against *in personam* claims against a debtor. See Morales v. Doral Bank (In Re Morales), 2012 Bankr. LEXIS 907 (Bankr. D. P.R. 2012) Parker v. Handy (In re Handy), 624 F. 3d 19, 20-21 (1st Cir. 2010). Section 524(a) ensures that the discharge will be completely effective and will operate as an injunction against the commencement or continuation of an action or the employment of process to collect or recover a debt as a personal liability of the debtor. 11 U.S.C. § 524(a). Thus, it protects the debtor from a subsequent suit in a state court, or any other act to collect, by a creditor whose claim had been discharged. Allan N. Resnick and Henry J. Sommer, 4 Collier on Bankruptcy, § 524.02 (15th Ed. 2011). To ensure the foregoing, Section 524(a)(1) of the Bankruptcy Code provides that any

judgment at any time obtained on a debt that is discharged is void as a determination of the debtor's personal liability. 11 U.S.C. § 524(a)(1).

"The stay bars a variety of creditor activities, including "any act to create, perfect, or enforce any lien against property of the estate." 11U.S.C. §362(a)(4); see also 11 U.S.C. §362(a)(5). This broad proscription has limits. Pertinent here, section 362(b)(3) provides that the stay does not extend to "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of [the Bankruptcy Code]…" "The purpose of Section 546(b)(1) is to "protect, in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens as of an effective date that is earlier than the date of perfection." See In Re Acosta, 464 at 94, citing Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶546.03[1] (15th Ed. 2009).

"Application of this exception to the stay depends upon the existence of three conditions: "there must be (1) an 'act to perfect' (2) an 'interest in property' (3) under circumstances in which the perfection-authorizing statute fits within the contours of section 546(b) []."" Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 116 (1st Cir. 2011), referencing 229 Main St. Ltd. Pshp. V. Mass. EPA (In Re 229 Main St. Ltd. P'ship), 262 F.3d 1, 4 (1st Cir. 2001). "[T]he filing of a bankruptcy petition does not prevent the holder of an interest in property from perfecting its interest if, absent the bankruptcy filing, the interest holder could have perfected its interest against an entity acquiring rights in the property before the date of perfection." *Id.*

In the present case, the mortgage deed was presented in the Property Registry in 2003. The mortgage deed was neither withdrawn nor notified as defective by the Registrar. In 2017 the entry of the mortgage was extended in the Property Registry by the Registrar, as allowed by section 362(b)(3). Moreover, all the communications sent by SPS advised the Debtor about the relation to the lien and the letters stated that they were not intended to collect on the discharged debt. This court has determined that sending monthly statements or insurance coverage letters to a Debtor, by itself, does not constitute a violation of the discharge injunction under 524(a)(2). *See* Navarro

v. Banco Popular de P.R. (In Re Navarro), 563 B.R. 127 (Bank. D. P.R. 2017). The court finds that SPS did not violate the discharge order as the correspondence sent by the Defendant did not attempt to collect the debt personally or coerced the Plaintiff to make payments. SPS's actions are permitted pursuant to 11 U.S.C. §524(j)(3) which allows a creditor to seek or obtain periodic payments associated with a valid security interest in lieu of pursuit of *in rem* relief to enforce a lien. The court concludes that the letters were informational in nature and did not violate the discharge injunction.

Conclusion

In view of the foregoing, Plaintiff's Motion for Summary Judgment (Docket No. 49) is hereby denied and SPS's Motion for Summary Judgment (Docket No. 50) is granted and the present adversary proceeding is dismissed.

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 10th day of September, 2019.

Enrique S. Lamoutte
United States Bankruptcy Judge